**Mark Byron TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–83–088–CR.**

Court of Appeals of Texas, Waco.

Dec. 8, 1983.

Discretionary Review Granted July 11, 1984.

**326**

William G. Rosch III, Rosch, Royce & Ross, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Winston E. Cochran, Jr., Asst. Dist. Atty., R.K. Hansen, Asst. Dist. Atty., Houston, for appellee.

## OPINION

THOMAS, Justice.

Appellant appeals his 16-year sentence for delivery of methamphetamines, such delivery being in the form of an offer to sell.

Through four grounds of error, appellant contends: (1) the indictment is fundamentally defective; (2) the evidence is insufficient on each element of the offense; (3) the court erred by not holding a hearing on a potential conflict of interests arising from Appellant's representation by an attorney who also represented his co-defendant; and (4) the court erred in requiring Appellant's counsel to represent his co-defendant because such dual representation was ineffective due to an actual conflict of interests between Appellant and his co-defendant.

We consider the third and fourth grounds at the outset and reserve our summary of the evidence for the second ground, which challenges its sufficiency.

Appellant and his co-defendant, Weber, were represented by attorney J. Michael Black and were tried together. On January 18, 1982, Black filed a pre-trial motion for continuance in Appellant's case, which asserted that Black had recently become aware of a potential conflict of interests between Appellant and Weber and that his knowledge of the potential conflict of interests was so recent that "he has not had a hearing on his Motion to Withdraw as attorney of record in either of the ... cases". In the prayer, Appellant requested the court to grant a continuance so the case could be properly prepared for trial and "so [Black] may withdraw as attorney of record in one of the [co-defendants'] cases". The order attached to the motion

for continuance contained the words, "Granted/Denied", and although the order was signed by the judge, neither word was marked out or circled to indicate the court's ruling. As Appellant's case was not tried until March 9, 1982, we conclude the motion for continuance was granted. On February 25th, Appellant filed a motion to sever Appellant's case from Weber's, which was overruled during a pre-trial hearing on the morning of Appellant's trial. The motion to sever does not mention a conflict of interests as a basis for severance.

Following his conviction, Appellant filed a motion for new trial, which was denied. In an affidavit attached to the motion, Black alleges he filed a motion to withdraw as counsel in Weber's case and that his motion to withdraw asserted a conflict of interests between Appellant and Weber as a basis for withdrawing as Weber's counsel. According to Black's affidavit, his motion to withdraw in Weber's case was denied, and as a result, his dual representation of Appellant and Weber was ineffective because conflicting interests existed between the co-defendants. Black's motion to withdraw in Weber's case, and the order showing the court's action thereon, were not filed in Appellant's cause; therefore, they do not appear in the record before us.

In ground three, Appellant argues the trial court had been made aware that a potential conflict of interests existed between Appellant and Weber and asserts the court reversibly erred in failing to hold a hearing to determine if Appellant and Weber should be represented by separate counsel. Citing *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), Appellant contends this appellate court must presume that a conflict of interests existed and that Appellant was harmed by the failure of the trial court to hold a hearing. The State contends that, since Black was Appellant's hired counsel, Appellant could have employed new counsel to conduct his defense, regardless of a judicial finding of a conflict of interests, and could have avoided any potential conflict of interests. Extending this argument, the State asserts Appellant was

granted a continuance from January 18th to March 9th for the purpose of allowing Black to withdraw as attorney for either Weber or Appellant, which was sufficient time for Appellant to change counsel and give newly-hired counsel adequate time to prepare Appellant's case for trial. The State also points out that, at the time of trial, neither Appellant nor Black made any objection to Weber and Appellant being represented by the same counsel.

 Requiring or permitting a single attorney to represent co-defendants is not *per se* violative of the constitutional guarantee of effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The Sixth Amendment does not require a trial judge to initiate an inquiry into the propriety of dual representation of criminal defendants in every case, and in order to trigger an affirmative duty on the part of the trial court to investigate whether a conflict of interests actually or potentially exists from dual representation of criminal defendants, a timely objection to multiple representation must be made. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The possibility of inconsistent interests must be "brought home to the court by formal objections, motions, and defense counsel's representations". *Holloway v. Arkansas, supra.* Absent special circumstances, the trial court may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risks of conflict as may exist. Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry. *Cuyler v. Sullivan, supra.*

 Based on a review of the record, we hold that no special circumstances exist in this case which would obligate the trial court to initiate its own inquiry into Black's joint representation of Appellant and Weber. In disposing of Appellant's third ground, our focus is, therefore, on the

question of whether Appellant "brought home to the court", by sufficient objection, motion or representation, the possibility that inconsistent interests might exist as a result of Black's joint representation of Appellant and Weber.

We are bound by the record before us, and the only place in the record where Appellant even hints prior to trial that a conflict of interests exists is in his written motion for continuance, which was filed nearly two months before his trial on the merits. Black's affidavit, which was filed in support of Appellant's motion for new trial, does allege that Black attempted to withdraw as counsel in Weber's case because conflicting interests existed between Appellant and Weber and that his motion to withdraw was overruled. However, Appellant's motion for new trial is merely a pleading. *Schneider v. State*, 594 S.W.2d 415 (Tex.Cr.App.1980). Black's affidavit is not evidence and does not prove itself. Furthermore, Black's affidavit cannot substitute on appeal for a statement of the evidence adduced at the hearing. *Kindell v. State*, 407 S.W.2d 784 (Tex.Cr.App. 1966).

Since the record does not contain a statement of facts relating to the hearing on Black's motion to withdraw in Weber's case, we cannot assume that the matter of a potential conflict of interests was ever raised, discussed or presented to the trial judge at the hearing. Neither does the record contain a statement of the evidence, if any, which was adduced at the hearing on Appellant's motion for continuance. Therefore, even though such a ground is contained in Appellant's written motion for continuance, this court would be engaging in the rankest of speculation to assume that the words, "potential conflict of interests", were even uttered in the trial court, let alone were brought to the trial judge's attention, as a basis for granting the motion. The record shows that Appellant's motion for continuance was heard by a presiding judge who did not try Appellant's case on the merits.

Absent a statement of facts to the contrary, if we are to assume anything at all, we should presume that the presiding judge who heard Appellant's motion for continuance dutifully inquired into the facts and circumstances surrounding Black's allegation of a potential conflict of interests. Further, we should presume that after such inquiry the trial court reasonably determined that no potential or actual conflict of interests existed as a result of Black's dual representation of Appellant and Weber or that Appellant, knowing his rights and understanding the inherent risks of joint representation, nevertheless desired joint representation as a trial strategy. The court could then have concluded that Appellant was entitled to a continuance so that his case could be properly prepared for trial.

We also note that Appellant's motion for continuance characterizes the conflict of interests between Appellant and Weber as a "potential" rather than an actual conflict. Even if we assume that presiding judge did not conduct such an inquiry at the hearing on the motion for continuance, the fact Appellant's motion was granted, thereby delaying his trial for almost two months, gave Appellant and Black sufficient time to determine whether a potential conflict of interests actually existed. As Appellant and Black did not see fit to raise any question again about a conflict of interests, either by motion, objection or representation, to the judge who tried Appellant's case on its merits, we hold the judge trying the case on the merits could reasonably conclude from the record that any potential conflict of interests had been investigated by Black and Appellant during the continuance and had been found to be without any reasonable basis or that Black and his clients had knowingly accepted such risks of conflict as part of their overall defense strategy.

Appellant and Black had ample opportunity to bring home to the court, either before or during trial, that a potential conflict of interests existed or had developed into an actual conflict and that Appellant

objected to Black also representing his co-defendant during the trial on the merits. During a hearing on pre-trial motions on the morning of Appellant's trial, Black did not mention to the trial judge any concern about a conflict of interests existing between Appellant and Weber, nor did he make any objection to his dual representation of the co-defendants. Appellant's motion for severance, which was filed within two weeks of Appellant's trial and over-ruled the morning of trial, did not refer to a conflict of interests as a ground for severance.

■ Before the trial court is to be reversed for failing to hold a hearing to investigate Appellant's claim of a conflict of interests, essential fairness requires Appellant to "bring home to the court" his objection to Black representing a co-defendant, either by a motion, objection or representation sufficient to clearly present such a contention to the trial court. The fact the words, "potential conflict of interest", may appear somewhere in a written pleading included in the record does not guarantee Appellant a reversal under *Holloway v. Arkansas, supra,* as we find no statement of facts demonstrating that such contention was ever argued or presented to the judge hearing the motion for continuance or to the judge who tried the case on its merits. *Allison v. State,* 618 S.W.2d 763 (Tex.Cr.App.1981). To hold otherwise under the facts presented would extend *Holloway* beyond its legitimate limits and guarantee Appellant a reversal because of his dexterity in getting such a contention included in a written pleading without ever having to demonstrate that his contention had been "brought home to the court".

■ We hold Appellant failed to "bring home to the court" the possibility that a conflict of interests existed between the co-defendants by a formal objection, motion or representation sufficient to put the trial judge on notice that such a claim was being asserted. Furthermore, we hold the circumstances are not such that the trial judge knew or should have known that a particular conflict existed or was being as-serted in the trial court. Ground three is overruled.

Appellant's fourth ground claims he is entitled to a reversal of his conviction, even though his Sixth Amendment right to conflict-free representation may not have been properly raised in the trial court, because Black's dual representation of Appellant and Weber was ineffective due to an actual conflict of interests which existed between the co-defendants. Appellant's fourth ground is without merit.

■ In order to establish a violation of the Sixth Amendment, a defendant who raises no objection at trial must demonstrate that an actual conflict of interests adversely affected his lawyer's performance. Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. A possibility of a conflict is insufficient to impugn a criminal conviction where no objection has been raised in the trial court. *Cuyler v. Sullivan, supra.*

After examining the record, we find nothing which indicates that Black's representation was hampered by an actual conflict of interests between his clients, other than allegations to such effect in Black's affidavit, which was filed in support of Appellant's motion for new trial, and in Appellant's brief. Appellant asserts that Black did not put Appellant and Weber on the stand because their testimony may have implicated each other and that Black was limited in his ability to cross-examine the State's major witnesses due to the fact that the case against Weber was stronger than that against Appellant. Finally, Appellant argues that, because of Black's dual representation, Black was required to treat both defendants together in arguing the case to the jury and, thus, Appellant and Weber were perceived by the jury as being "partners".

The crux of Appellant's argument is that Black was hampered in his ability to shift blame from Appellant to Weber as a result of the dual representation and that this

actual conflict of interests resulted in ineffective legal assistance to Appellant's case. Appellant's reasoning in this regard was rejected in *United States v. Benavidez*, 664 F.2d 1255 (5th Cir.1982), wherein the court held that, to accept such reasoning, would necessitate a *per se* rule requiring separate representation of criminal defendants in every instance. As noted before, the law is well-settled to the contrary. In addition, joint representation of co-defendants has long been accepted as a viable defense tactic to insure against reciprocal recrimination among parties charged with criminal offenses and to present a common defense against a common attack. *Holloway v. Arkansas, supra.* The federal courts have routinely rejected claims that defense counsel needs to be free to abandon a "united front" defense strategy. *United States v. Benavidez, supra.*

▉ Certain risks are inherent in the decision of co-defendants to rely on joint legal representation, whatever the reason or perceived benefits may be. The fact their legal counsel may ultimately find maneuvering more difficult, when confronted with evidence showing the State's case to be stronger against one client than the other, does not mean that if convicted a defendant is entitled to reversal because hindsight has proven the co-defendants' decision to have been ill-advised. The same reasoning would apply where legal counsel realizes his clients are being viewed as partners in crime due to joint legal representation. If actual conflict of interests can be established on this basis, a case in which an untested strategy will not look better than an unsuccessful one will be rare. *United States v. Benavidez, supra.*

▉ After examining the evidence in the record and the proceedings as a whole, we hold Appellant has not demonstrated an actual conflict of interests causing Black's joint representation to be constitutionally ineffective. The record does not show that Appellant stood to gain significantly from abandoning dual legal representation or his common defense with Weber, nor do we find the evidence insufficient to support Appellant's conviction, as noted in our disposition of ground two. The fact the State's evidence may have been stronger against Weber than Appellant in no way tends to prove Appellant's innocence. In any event, based on the evidence and under the law of parties, Appellant's guilt was no different in degree from Weber's. We find no evidence in the record, other than mere allegations in Black's affidavit and Appellant's brief, that Black was ever forced to choose Weber's interests over those of Appellant's. Ground four is overruled.

In ground one Appellant contends he was tried on a fundamentally defective indictment. We quote the pertinent portion of Appellant's indictment:

"... the Defendant, heretofore on or about July 30, 1981, did then and there unlawfully intentionally and knowingly deliver by offering to sell to Jerry D. Powell, a controlled substance, namely, methamphetamine."

Appellant was convicted under Tex.Rev. Civ.Stat.Ann. art. 4476–15, sec. 4.03(a), which provides that "a person commits an offense if he knowingly or intentionally manufactures, delivers, or possesses with the intent to manufacture or deliver a controlled substance", such as methamphetamine. "Delivery" not only includes actual or constructive transfer but also includes an offer to sell. Tex.Rev.Civ.Stat.Ann. art. 4476–15, sec. 1.02(8).

▉ Appellant argues, without citing any authority directly on point, that his indictment was fundamentally defective because it did not allege that he "intentionally offered to sell" the controlled substance to the undercover narcotics agent, along with the allegation in the indictment that he knowingly or intentionally made a delivery of the controlled substance. We reject Appellant's reasoning, as we do not think the Legislature intended, in enacting sec. 4.03(a), to require Appellant's indictment to read that he did "knowingly or intentionally deliver by knowingly and intentionally offering to sell" a controlled substance. Where the gravamen of an offense is an act coupled with a specific intent, pleading

the requisite specific intent is sufficient to allege a culpable mental state. In any event, in the absence of a complaint against the indictment in the trial court, we hold the error of which Appellant complains does not render his indictment fundamentally defective. *Ex parte Prophet,* 601 S.W.2d 372 (Tex.Cr.App.1980). Ground one is overruled.

Ground two challenges the sufficiency of the evidence supporting Appellant's conviction. According to Appellant, the "proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree", as required by Tex.Rev.Civ.Stat.Ann. art. 4476–15, sec. 1.02(8).

In order to place Appellant's contentions in perspective, we must briefly sketch the facts resulting in Appellant's arrest and conviction. Ferris, an informant, told Powell, an undercover narcotics agent, that Ramage had a large quantity of methamphetmine to sell. Ferris introduced Powell to Ramage at a bar, and Ramage proceeded to negotiate with Powell for the sale of one pound of methamphetamine for $26,000.00. After Powell, Ferris and Ramage settled a controversy on how and when the money would be exchanged for the drugs, Ramage arranged for Powell to meet Weber, Appellant's co-defendant, at the bar where the sale was being negotiated. Weber told Powell and Ferris, "Let's go do the deal", or used words to that effect, and Powell and Ferris left the bar and followed Weber to a vacant lot where they met Appellant. Appellant indicated that, before he would deliver the drugs to Powell, he would have to count the money. Powell and Appellant got into Powell's car, leaving Ferris and Weber standing on the vacant lot, and drove to the parking lot of a nearby convenience store where Appellant counted the $26,000.00 While Appellant was sitting in Powell's car counting the money, a Houston police car drove into the parking lot of the convenience store on a matter unconnected with the surveillance surrounding Powell's participation in the undercover drug bust. Upon seeing the police car, Appellant told Powell, "Let's get out of

here. The stuff is on the [vacant] parking lot where we were". Powell then signaled to waiting officers who arrested Appellant in Powell's car, and officers also arrested Ferris and Weber as they waited on the vacant lot. Based on Appellant's statement that "the stuff is on the parking lot where we were", police officers searched the vacant lot and promptly found a bag containing almost one pound of methamphetamine.

Ramage evaded arrest and at the time of the trial his whereabouts were unknown to the State. Powell and Ferris both testified, and their testimony establishes the essential facts recited above. Appellant argues that Ferris was an "offeree" in Ramage's offer to sell and, therefore, Ferris' testimony cannot be used to corroborate Powell's testimony of Ramage's offer to sell. The State contends Powell's testimony is corroborated by Ferris' testimony and by the discovery of the drugs on the vacant lot where Appellant told Powell they were hidden. Appellant further alleges that, since the record does not contain any other evidence showing Appellant's intent to assist the offer to sell made by Ramage to Ferris and Powell, Appellant is entitled to a reversal and acquittal.

 Under the facts presented, we hold that Ferris was not an "offeree" within the meaning of the sec. 1.02(8). The record *does not show* that Ferris' participation in the transaction extended to anything more than being the person who brought the buyer and seller together. The evidence does not show, for example, that Ferris attempted to purchase the drugs from Ramage in order to resell them to Powell or to any other person; however, the evidence is sufficient to show that Ferris, as an informant, was facilitating the drug buy for Powell and that Ramage, Weber and Appellant were aware that Powell had the money and was the intended purchaser. The mere fact that Ferris was present at the time Ramage offered to sell the drugs to Powell does not establish Ferris as an "offeree" within the meaning of sec.

1.02(8). Since an offeree's testimony of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree, all parties who are present when an offer to sell a controlled substance is made should not be considered offerees by mere virtue of their presence. Ferris' testimony, as a non-offeree, is sufficient to corroborate Powell's testimony as an offeree and to sustain Appellant's conviction.

Having overruled all of Appellant's grounds of error, we affirm.