Jairo M. VIVANCO, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–90–00200–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 6, 1992.

Discretionary Review Refused May 20, 1992.

Robert A. Rodriguez, Houston, for appellant.

Mary Lou Keel, Houston, for appellee.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

JUNELL, Justice.

Appellant was convicted by a jury of the felony offense of delivery by offering to sell a controlled substance, namely, cocaine, weighing by aggregate weight, including any adulterants and dilutants, at least 400 grams. He was sentenced by the court to thirty years imprisonment and assessed a $25,000.00 fine. We affirm.

This story begins on the morning of May 25, 1989 when a confidential informant contacted Detective Albert Ray Diaz of the Harris County Sheriff's Department, Narcotics Division. The informant tipped Detective Diaz regarding potential suppliers of ten to fifteen kilos of cocaine, and agreed to set up a meeting between the Detective and the drug dealers. This offer

to deliver cocaine occurred during four different meetings and involved a group of five different people.

The first meeting took place at 11:30 a.m. on May 25, 1989 at the Dairy Queen on Airline. Detectives Diaz and John Schulte, both of the Sheriffs department, the informant and Jairo Manual Vivanco, the appellant, were present at the meeting. Detective Diaz informed appellant that he was interested in purchasing eight kilos of cocaine. Appellant assured the detective that he could provide all eight kilos at a wholesale price of $17,000.00 per kilo for a total of $136,000.00. He asked to see the money and Detective Diaz took him to the truck were Detective Schulte was waiting. Appellant saw the money and then explained that he needed to speak with his contact about arranging the delivery. He told Diaz that he would call as soon as he spoke with his connection. Appellant left the Dairy Queen and entered an apartment at 11555 Airline. It was not until 1:10 p.m. that appellant beeped Det. Diaz and told him that his connection was coming to his apartment.

Appellant arranged for a second meeting to occur at 1:30 p.m. at the Dairy Queen. He left the apartment complex for the meeting in a blue Cutlass. Jimmy Rodriguez and Johnny Rodriguez were also riding in the Cutlass. The appellant drove to the Dairy Queen parking lot and waited for the detectives to arrive. Detectives Diaz and Schulte parked their truck in the Jack in the Box lot next to the Dairy Queen. Det. Diaz walked to the Cutlass and was introduced by appellant to Jimmy and Johnny Rodriguez. Appellant said that Jimmy had a supplier, but Jimmy wanted to see the money first. After looking at the money, Jimmy Rodriguez said that he would call his connection immediately, and then proceeded to a pay phone near the Dairy Queen. He made a phone call. Jimmy came back from the phone and explained to Diaz that the cocaine would not be available until around 5:00 p.m. when his contact got off work. Jimmy agreed to beep Diaz when the cocaine arrived in the area. Jimmy, Johnny and appellant got back in the Cutlass and drove to the apartment at 11555 Airline.

After the telephone call was made, Garces Estrada and Alegria arrived at the Airline apartment in a red Subaru. Appellant beeped Det. Diaz after 5:00 p.m. to let him know that he would beep him again as soon as the cocaine arrived. Surveillance was maintained on the apartment at Airline. The appellant, Estrada, Jimmy, Johnny, and Alegria were seen carrying clothes out of the apartment. After loading the clothes into the two cars, appellant and the Rodriguezes drove off in the Cutlass, while Estrada and Alegria left in the red Subaru. Estrada and Alegria stopped at a dumpster near the apartment and Alegria pulled a gray duffel bag out of the dumpster. The duffel bag was similar to the one which was found in the blue Cutlass when appellant and the four other persons were arrested. Alegria put the duffel bag in the Subaru and they drove off.

Appellant paged the detectives again and informed them that the cocaine had arrived. They arranged for a third meeting at the Dairy Queen at 6:00 p.m. Appellant stalled the transfer explaining that a drop-off location was needed. He asked to see the money for the third time. The detectives showed him the cash, and then appellant asked if he could ride to the transfer location with them. Det. Diaz noticed a bulge in the back of Vivanco's pants and asked if he was carrying a gun. Appellant lifted his shirt and showed the detective the pistol grips. When asked why he carried the gun, he stated that it was for his protection and the protection of the cocaine. The detectives asked Vivanco to ride in his own car based on the fact that he was armed. The transfer was scheduled to take place at an apartment complex located at Denmar and Imperial Valley. The detectives followed the group in the blue Cutlass. The red Subaru was seen circling the complex before the Cutlass arrived. The Subaru then parked at an office complex across the street from the Denmar/Imperial Valley apartments. Alegria and Estrada walked from the Subaru to the apartment complex. Alegria walked in and out of the breezeway at the apartment and looked all

around until Estrada picked him up in the Subaru. The Subaru was then followed from the Denmar/Imperial Valley apartment complex to the apartment on Airline. The Subaru was seen entering the parking lot and it parked near the entrance to appellant's apartment.

Back at the apartment complex on Imperial Valley, appellant showed the detective a bag which was similar to the one found in the Cutlass when all five persons were arrested. The bag contained several blocks wrapped in gray duct-tape. Appellant gave Det. Diaz a small sample in a little bag to test. The detective asked to test the packages wrapped in duct tape, but appellant refused. Then appellant gave the order to leave and he and the two Rodriguezes drove away in the Cutlass. They returned to the Airline apartment complex and parked next to the Subaru. Contact between the parties was re-established at about 10:00 p.m. when appellant beeped Diaz. They agreed to talk again in the morning at 11:00 a.m.

The fourth and final meeting was scheduled to occur on the morning of May 26, 1989 at the Safeway store on Airline. Detective Diaz demanded to sample the cocaine. Surveillance of the Airline apartment continued on the morning of May 26th. That morning the red Subaru was parked at the complex two cars down from the Cutlass. Estrada and Alegria were seen exiting the Airline apartment with appellant, Jimmy and Johnny at about 11:30 a.m. Appellant parked the Cutlass in the Safeway lot next to Detective Diaz's Lebaron. Detective Schulte parked his truck twenty five yards away.

The drug sale was in progress on the other side of the parking lot. Det. Diaz asked to see the merchandise and to test it, but the appellant wanted to see the money first. Diaz insisted on testing the packages. Appellant cut into the bundles and gave the detective a sample. After he tested the cocaine, Detective Diaz told appellant he was going to the car for the money. He then gave the bust signal. Detectives Diaz and Schulte left the scene in the truck. Det. J.W. Pruitt arrested the three

people in the Cutlass including appellant. He recovered a loaded pistol from appellant's pocket and a loaded pistol from the floorboard of the Cutlass in front of Johnny Rodriguez. The gray duffel bag was also recovered from the Cutlass. The bag contained the gray duct tape packages. The examination of the packages revealed that six of the eight packages contained a bottle cap filled with cocaine.

■ In appellant's first point of error he asserts that the evidence was insufficient to support his conviction for delivery by offer to sell at least 400 grams of cocaine. Appellant alleges that he should only have been convicted of delivery of a simulated controlled substance since he delivered only 6.48 grams of cocaine. We disagree with this argument, and overrule appellant's first point of error.

The court of criminal appeals ruled on this same argument in *Stewart v. State*, 718 S.W.2d 286 (Tex.Crim.App.1986). It distinguished the offense of delivery by offer to sell from the offense of delivery of a controlled or simulated controlled substance. The court explains:

When delivery is by offer to sell no transfer need take place. A defendant need not even have any controlled substance. All he need do, as appellant did, is state that he had a hundred dollar bag of heroin he would sell to the officers. The offense is complete when, by words or deed, a person knowingly or intentionally offers to sell what he states is a controlled substance. Therefore, the fact that the substance is later found not to be a controlled substance does not render the evidence insufficient to prove the offense of delivery by offer to sell a controlled substance. The element of "controlled substance" is proved by appellant's statement offering to sell heroin.

■ The offense of delivery by offer to sell is complete when the appellant makes his offer. The court of criminal appeals has made it clear that the fact that the substance later turns out to be less or not what was offered is not on its own enough to render the evidence insufficient

to prove the offense. The standard of review of a jury verdict of guilty is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984). If the conclusion of the guilt of the defendant can be drawn from the combined and cumulative force of all the incriminating circumstances a rational trier of fact could have found guilt. *Russell v. State*, 665 S.W.2d 771, 776 (Tex.Crim.App.1983). A rational jury could have found that all the elements of the offense of delivery by offer to sell were proven in this case. The court in *Stewart* explains that "When the prosecution involves delivery 'by offer to sell' that element can be met by the representation, by word or deed, that the person has a controlled substance to sell. The chemical properties or indeed, the presence or possession of any substance is not necessary to the offense." This is clearly the situation in this case. Appellant represented by word that he could supply eight kilos of a controlled substance, and the fact that it later turned out to be 6.48 grams of cocaine and the rest flour is irrelevant to his prosecution for delivery by offer to sell based on *Stewart*. The cumulative and combined force of the evidence indicates a reasonable trier of fact could have found the appellant guilty of delivery by offer to sell, without regard to whether he actually delivered the agreed upon amount of cocaine or not.

Appellant contends in his second point of error that he should have been charged with the offense of delivery of a simulated controlled substance instead of delivery by offer to sell a controlled substance. We overrule this point of error on the grounds discussed above.

■ The two offenses are not the same, and as the court or criminal appeals explained in *Stewart* the chemical properties of substance actually delivered are not an element of the offense of delivery by offer to sell. They are two different offenses. Each requires proof of different elements for conviction. There was enough evidence presented from which a rational trier of fact could have found appellant guilty of delivery by offer to sell. There is nothing which requires the appellant be convicted of delivery of a simulated controlled substance rather than delivery by offer to sell. We overrule this point of error.

Next, appellant asserts in his third point of error that the offer to sell cocaine was not corroborated as required by Tex. Health & Safety Code Ann. § 481.183 (Vernon 1991). The fourth point of error also relates to this assertion and is best dealt with in this discussion. Appellant contends in his fourth point of error that his conviction should be reversed because his intent to deliver by offer to sell a controlled substance was not sufficiently corroborated. We disagree with appellant on both points and accordingly overrule the third and fourth points of error.

■ Again these elements were found by the jury in their guilty verdict and on review this court must look at the evidence in the light most favorable to the verdict. The standard of review is whether a rational trier of fact could have found these elements beyond a reasonable doubt. The provision of the code detailing the elements of this offense states that "... an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree." Appellant asks this court to apply the corroboration standard used in the accomplice witness testimony cases to this type of case. We decline to do that in light of *Garber v. State*, 671 S.W.2d 94 (Tex.App.—El Paso 1984, no pet.). In *Garber* the testimony of the officer who was the offeree was considered in conjunction with the other evidence offered. The policy concerns behind the application of the accomplice witness rule are not wholly presented in this situation. In *Garber* the holding made it clear that the stringent corroboration requirements applicable in accomplice witness settings are not applicable in delivery by offer to sell cases. The court explains that the corroboration requirements are in place based on the fact that the defendant can be convicted of the delivery by offer to sell for mere verbal conduct alone. Based on this reason the offeree's testimony is relevant

and should be taken in conjunction with the other evidence presented.

In *Stewart* the court of criminal appeals makes it clear that the mere fact that the appellant does not actually deliver the total amount of the drugs offered does not render the evidence insufficient to convict. The testimony by Officers Diaz and Schulte corroborate the circumstances of the offer along with the actual delivery of 6.48 grams of cocaine. In *Stewart* the crime was committed by the offer, and the circumstances surrounding the offer are viewed to determine if the offer is corroborated. Again this finding by the jury that the offer was corroborated must be viewed in the light most favorable to the verdict. This court must determine if based on the evidence presented a rational trier of fact could have found that the offer was corroborated beyond a reasonable doubt. We hold that there was sufficient evidence for the jury to find that the offer was actually made. The testimony of Officers Diaz and Schulte taken together with the four different meetings where appellant was the contact man provides sufficient corroborating evidence of the offer. The delivery of some drugs also serves to corroborate the offer to sell.

■ Appellant's intent to offer to sell the cocaine has been sufficiently corroborated by the circumstances surrounding the sale. The appellant delivered packages which were the size of the terms of the offer, and he allowed Officer Diaz to sample the drugs. His subjective assertions that he never intended to offer to sell cocaine, and that he only wanted to rob the officers, is not sufficient to negate the strong circumstantial evidence. The offense appellant was convicted of was delivery by offer to sell. The holding by the court of criminal appeals in *Stewart* that actual drugs are not required to be delivered for an offense to be committed has already been discussed in detail in this opinion. The evidence which was used to corroborate the offer is also used to corroborate the intent to offer to sell. Again this element was found by the jury in their verdict of guilty, and this court must view the evidence in the light most favorable to the verdict. There was sufficient evidence that a rational trier of fact could have found appellant intended to offer to sell cocaine. Appellant had several meetings with officers continuously re-asserting the offer. He made two deliveries to the officers each time with actual drugs. He was the primary actor in all of the negotiations. A rational trier of fact could have found beyond a reasonable doubt that he intended to offer to sell a controlled substance. We overrule the fourth point of error.

■ Appellant's fifth point of error alleges that the evidence was insufficient to support the affirmative finding that he used a deadly weapon during the commission of this offense. The argument presented by appellant in support of this point is that he exhibited the gun long after the offense had been committed. We overrule this point of error.

Appellant contends that the offense occurred once when he made the initial offer and that the gun was not exhibited until much after this. This argument is not persuasive. Appellant offered to sell cocaine to the officers again each time he met with them. This offer continued through several meetings, it was not a one-time occurrence. Appellant exhibited the gun to facilitate this offer. The court of criminal appeals has held that "a rational trier of fact could find that appellant 'used' the firearm during the commission of the felony offense of possessing the contraband, in a sense that the firearm protected and facilitated appellant's care, custody, and management of the contraband." *Patterson v. State*, 769 S.W.2d 938 (Tex.Crim. App.1989). It is clear from the evidence that a rational trier of fact could find that appellant used the gun when he exhibited it during the negotiations for the drug sale. The offer clearly was not a one time thing; it was a continuing offer renewed each time the parties met. Testimony was presented that appellant said that he carried the gun to protect himself and the cocaine. He continued to offer to sell the cocaine throughout the two days of negotiations and he used or exhibited the gun

during the commission of the offense as required by TEX.CODE CRIM.PROC.ANN. art. 42.12 sec. 3g(a)(2) (Supp.1992).

Appellant asserts in his sixth point of error that the trial court erred in failing to apply the law of corroboration to the facts in its jury charge. This point needs little discussion based on the fact that appellant failed to object to the charge. Since appellant failed to object to the charge, he is required to show that if this is error he suffered egregious harm from it. *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984). The charge in this case instructed the jury on the corroboration requirement and that acquittal was the next step if the jury did not find corroboration. The corroboration requirement was mentioned during the closing arguments of both the prosecutor and the counsel for the co-defendants. Viewing the record as a whole, it is clear that the appellant did not suffer egregious harm from the failure of the trial court to apply the corroboration requirement to the facts. We overrule the sixth point of error.

The judgment is affirmed.