Daniel **HERNANDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–96–00096–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 30, 1997.

Decided Oct. 31, 1997.

Ruth Falls, Houston, for appellant.

Keli Pool Roper, Assistant District Attorney, Houston, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Daniel Hernandez was found guilty of delivery of a controlled substance by offering to sell at least 400 grams of cocaine to an undercover police officer, H.C. Riddle, and was sentenced to fifteen years' imprisonment.

Hernandez brings three points of error contending that: (1) the trial court erred by not granting a mistrial when the State failed to disclose the existence of a second confidential informant; (2) audiotapes admitted at trial were not properly authenticated; and (3) the evidence was insufficient to support the verdict.

Gary Henson, a confidential informant working for the Houston Police Department, informed Riddle that Hernandez and Harry Schneider were interested in selling a kilogram of cocaine. Henson arranged a meeting between himself, Riddle, Hernandez, and Schneider to discuss the sale of the cocaine. The first meeting took place on February 10, 1996, at a mall parking lot. Riddle wore a body microphone and taped the conversation. Riddle and Henson arrived in Riddle's truck, while Hernandez, Schneider, and a man called Rex arrived in Schneider's car. Hernandez got into Riddle's truck and told the officer that he had a cocaine sample to give him, but suggested that they first move to a better location across the street. Once across the street, Hernandez spoke with the informant, Henson, outside the vehicles.

Rex then got into Riddle's truck and gave Riddle a sample of cocaine. He told Riddle that the remaining cocaine was not yet in Houston and that, when it arrived, he would contact Hernandez, who would in turn contact Riddle to set up another meeting. Riddle showed Rex $22,500.00 in cash that was to be used to buy the cocaine when it became available.

On February 13, Riddle was told to go to a Kmart store for their next meeting. Hernandez and his party did not show.

On February 15, Riddle was again contacted and told to go to a local pharmacy, from which he would be taken to a nearby motel room. Riddle and Henson arrived in Riddle's truck, and Hernandez and Schneider arrived in Schneider's car. Riddle was once again wearing a body microphone, and the conversation was taped. Hernandez again spoke briefly with Henson outside the vehicles. Hernandez then got into the truck with Riddle to ride to the motel, while Henson rode with Schneider. During the fifteen-minute trip to the motel, Hernandez discussed the sale of the cocaine with Riddle. Once at the motel, all four men entered the motel room, where Riddle was told that a phone call was necessary to effectuate the delivery of the cocaine to the motel. Schneider left to make the call. Upon Schneider's return, he stated that their contact was going to drop off the cocaine at the motel parking lot, after which Hernandez and Schneider would complete the transaction with Riddle. After waiting approximately thirty minutes, Schneider left again to make a call to find out what was taking the contact so long. When he returned five minutes later, Schneider said that his contact was on the way. After another thirty-minute wait, Riddle said he was leaving but could be paged if the third party showed. They did not page him.

On February 27, Riddle was contacted by Sergeant Smith of the Tomball Police Department, who informed Riddle that an informant used by the Tomball police had been contacted by Schneider. Schneider wanted the Tomball informant to supply him with a kilogram of cocaine, the same quantity needed to consummate the deal with Riddle. Riddle understood that the Tomball police were attempting, through their informant, to make a money seizure from Schneider and that the substance to be delivered in their transaction would be simulated. Realizing that his deal with Hernandez and Schneider for a kilogram of cocaine was probably not going to materialize and that continuing his pursuit of this transaction would be at odds with the Tomball transaction, Riddle determined to close his investigation and proceed with obtaining warrants for the arrest of Hernandez and Schneider. A warrant for Hernandez' arrest was issued on February 28. Riddle attempted to meet with Hernandez to execute that warrant, but it was not until Hernandez contacted Henson and asked for a meeting on March 20 that the arrest was finally made.

Riddle did not know the identity of the Tomball informant and divulged the existence of this informant for the first time during direct examination at trial. Hernandez objected on the ground that the State's failure to inform Hernandez of this informant's existence was a violation of his due process rights, and he asked for a mistrial. The trial court overruled his motion.

In his first point of error, Hernandez asserts that the failure of the State to disclose the identity of the confidential informant from Tomball should have resulted in a mistrial and the trial court erred by overruling Hernandez' mistrial motion. He argues that the State was required to disclose the identity of the informant under Texas Rule of Criminal Evidence 508[1] and the failure of

## 1. RULE 508. IDENTITY OF INFORMER

(a) **Rule of Privilege.** The United States or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

. . . . .

(c) **Exceptions.**

. . . .

(2) *Testimony on Merits.* If it appears from the evidence in the case or from other showing by a party that an informer may be able to give

the State to do so violated his due process rights and should have resulted in a mistrial. Hernandez points particularly to Rule 508(c)(2), which requires disclosure when "an informer may be able to give testimony necessary to a fair determination of ... guilt, innocence...."

When asking for disclosure under Rule 508, the defendant has the threshold burden of demonstrating that identity must be disclosed. *Bodin v. State*, 807 S.W.2d 313, 318 (Tex.Crim.App.1991). This burden, however, is a low one. The defendant need only make "a plausible showing" of how the informer's information may be necessary to the determination of guilt or innocence. *Id.* The burden is set low so that even if the defendant does not know the nature of the informer's testimony, the defendant may have an opportunity to demonstrate to the court how the informant's testimony may be relevant. Although the burden is low, it is not insubstantial. Conjecture or speculation is not enough to require the disclosure of the informant; evidence, from any source, is required. *Id.*

Hernandez argues that since he was unaware of the existence of the informant until the trial, he did not have an opportunity to develop any evidence with which to meet his burden in demonstrating to the trial court that the identity of the informant should be disclosed. This argument is unpersuasive.

First, the offense for which Hernandez was indicted was completed in its entirety on February 15, in the presence of Officer Riddle. Hernandez was indicted and charged for delivery of cocaine by an offer to sell based on the events of February 15. "[A] person commits an offense if the person knowingly or intentionally ... delivers ... a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon Supp.1997). Penalty Group 1 includes cocaine.[2] "Deliver" is de-

fined to include offering to sell a controlled substance.[3] On February 15, Hernandez met with Officer Riddle at the motel and made such statements to him as "if you front me half of the money, I go straight to the house get them kilos, deliver them to you" and "I'll get the key first and I'll tell you 'Look, look at the key. Is it good?' ... if it's not, then you don't give me the money." The conversation was also recorded. The information gathered from Tomball on February 27 had no significant bearing on the guilt or innocence of Hernandez, but simply apprised Riddle that the physical delivery of the cocaine would not be realized. Rule 508 is not implicated since the information from the Tomball informant on February 27 is not necessary to a fair determination of the guilt or innocence of Hernandez with regard to the offense committed on February 15.

Second, when Hernandez was asked by the trial court if he had anything to indicate that the confidential informant would have furnished anything exculpatory, he responded that he had nothing. When asked again by the trial court if there was any evidence from the Tomball informant which was exculpatory or available for use in impeachment, counsel responded that "at this point in time, I do not have any exculpatory evidence that is confirmed through this CI;...." Counsel then asserted that the use of the confidential informant, which effectively resulted in the arrest, "smacks of evidence" that would be material to the case. However, counsel offered nothing to the trial court as the basis for this conclusion. The standard requiring disclosure requires more than speculation that the informant may have relevant evidence. Hernandez made no attempt to demonstrate how any testimony by the informant would be relevant to his guilt or innocence. Therefore, even if Rule 508 had been implicated, Hernandez failed to meet his burden under that rule requiring

testimony necessary to a fair determination of the issues of guilt, innocence and the public entity invokes the privilege, the judge shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.... TEX.R.CRIM EVID. 508(a),(c)(2).

**2.** TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Vernon 1992).

**3.** TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon 1992).

disclosure of the informant's identity. His first point of error is overruled.

Hernandez' second point of error asserts that the audiotapes of conversations between Riddle and himself, made on February 10 and February 15 and admitted into evidence over his objection, were not properly authenticated. An identical point was raised in *Schneider v. State*, 951 S.W.2d 856 (Tex. App.–Texarkana 1997, no pet. h.). Schneider and Hernandez were co-defendants who were tried together, but were represented by separate counsel at trial. Schneider's counsel objected at trial to the admission of the audiotapes, and Hernandez' counsel adopted those same objections. For the reasons expressed in *Schneider*, this point is resolved against Hernandez and in favor of the State.

■ Hernandez' third point of error challenges the sufficiency of the evidence to support the conviction. We consider that Hernandez has challenged the evidence as being both legally and factually insufficient. In determining whether evidence is legally sufficient to support a judgment, we view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996).

■ Hernandez claims that the State failed to prove that he made an offer to sell a controlled substance to an undercover police officer. The elements of an offense under Section 481.112 are (1) a person (2) knowingly or intentionally (3) delivers (4) a controlled substance. When delivery is by offer to sell, the offense is complete when, by words or deed, a person knowingly or intentionally offers to sell what he states is a controlled substance. *Stewart v. State*, 718 S.W.2d 286, 288 (Tex.Crim.App.1986); *Francis v. State*, 890 S.W.2d 510, 513 (Tex.App.–Amarillo 1994, pet. ref'd); *Rodriguez v. State*, 879 S.W.2d 283, 286 (Tex.App.–Houston [14th Dist.] 1994, pet. ref'd). Hernandez contends in his brief that he never made the statement to Riddle that "I have a kilo of cocaine to sell for $21,000—$23,000" on either February 10 or February 15. However, the record shows that in response to Riddle's question on February 10 asking if he wanted to sell a kilo, Hernandez said "Yeah, I mean I got it, yeah, it's no problem, I got a kilo." When the transaction did not materialize on February 10, Hernandez and Riddle met again on February 15. At this meeting, Hernandez made statements to Riddle that he would rather take the money, deliver it to his source and bring the cocaine back to the motel ("if you front me half of the money, I go straight to the house get them kilos, deliver them to you"). In his defense, Hernandez testified at trial that he never intended to deliver cocaine. He asserted that he was simply trying to steal the money from Riddle. The jury chose to believe otherwise. The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony. A jury is entitled to accept one version of the facts and reject another or reject any of a witness' testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt and that the evidence is therefore legally sufficient.

■ Since the sufficiency argument offered by Hernandez on appeal is ambiguous as to whether he is asserting legal or factual sufficiency, we will also assess the factual sufficiency of the evidence. When reviewing the factual sufficiency of the evidence, we review all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

■ Hernandez testified that Rex was the one who wanted to make the deal with Riddle and that Rex had a reputation of being a drug dealer. The record does show that Rex passed the sample of cocaine to Riddle on February 10. Hernandez further testified that Rex had formulated a plan to steal the money from Riddle. Hernandez asserted that his role on February 15 was

simply to get Riddle to the motel and then separate him from his money. He claims that he never intended to sell a kilo of cocaine. Hernandez also testified that Rex, not he, responded to the question on February 10 asking if they had a kilo to sell. Hernandez claims that Riddle mistakenly identified his voice on the tape of February 10.

The State presented direct evidence through tape recordings of February 15 which capture Hernandez making statements describing his capability to procure a kilogram of cocaine to sell to Riddle. Hernandez did admit that his voice was correctly identified on the tape of February 15, and he did make statements offering to sell a kilo to Riddle. In his defense, Hernandez claims such statements were a ruse in order to convince Riddle to relinquish his money.

Viewing all the evidence presented at trial, we determine that the judgment is not so against the great weight and preponderance of the evidence as to be manifestly unjust; the evidence is factually sufficient to support the conviction. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.