Genary KNIGHT a/k/a Genary Lois Bailey, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–01–172–CR.

Court of Appeals of Texas, Waco.

Nov. 6, 2002.

**420**

John A. Kuchera, Waco, for Appellant.

Kathryn J. Gilliam, County Attorney for Falls County, Marlin, for Appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Genary Knight a/k/a Genary Lois Bailey ("Knight") of delivery of less than one gram of cocaine by offer to sell. The jury found an enhancement allegation true and assessed Knight's punish-

ment at ten years' imprisonment and a $10,000 fine. Knight presents five issues in which she contends: (1) the evidence is legally insufficient to support her conviction; (2) the evidence is factually insufficient to support her conviction; (3) her trial counsel rendered ineffective assistance during the guilt-innocence phase; (4) her sentence is void; and (5) her trial counsel rendered ineffective assistance during the punishment phase.

## BACKGROUND

Undercover officer John Anastacio and "cooperating individual"[1] Jimmy Bland drove to "The Tree"[2] in Rosebud to make a drug buy. Bland saw Knight, whom he knew, and called her to the car. According to Anastacio, Knight asked whether they "wanted to have sex," to which he replied in the negative. Anastacio told her that they wanted "something to smoke." She asked if they wanted "rock cocaine or crack." Anastacio said he wanted a rock. She asked whether he wanted a $10 or $20 rock. He said $20.

Knight told him she needed the money. Anastacio told her he "didn't want to get ripped off." She assured him that she would not do that and that she needed the money to get the rock. Bland told Anastacio he did not think "she'd rip [them] off." Anastacio gave Knight the money. She told them to circle the block and she'd have the rock for them. Before they pulled away, she told them to drive to town

1. Anastacio testified that Bland approached him and told him that "he was tired of the narcotics sales being made in Falls County, and he wanted to do something about it." Anastacio described a "cooperating individual" as one "who comes forward and wants nothing in return, who is just doing it because either, usually it's because a family member has been involved in dope and hurt severely, or the family has been hurt severely. A family member getting addicted to some type of dope, or they just—they are just sick and tired of watching it go on, and they want to do something about it."

2. Anastacio described "The Tree" as a pecan tree in Rosebud where a number of people gathered. He characterized it as "a very high area of narcotics traffic." He also testified that the city council has since "cleaned it up."

then come back for the rock. They complied. When they returned, Knight was nowhere to be found.

Bland's testimony largely corresponds with Anastacio's. He testified that Anastacio and Knight discussed "[t]he purchase of crack cocaine" and that Anastacio gave her $20. He recalled that she told them to circle the block and she'd have the cocaine for them.

Knight testified that she was "really angry" on the evening in question because Anastacio and Bland had been driving around town asking for her. She said that she knew both of them and knew that Anastacio was an officer. She described her encounter with them thus:

> They said come here, and I said who is that? He said you know me, Jimmy Bland from Marlin. He said—no, he said my old buddy over here wants to know where I can get some stuff at, and I said what? What are you talking about, and he said some stuff and a girl, and I said what are you talking about? He said marijuana and crack, can you go get it for us? I said give me the money, and he gave it to me, and I left.

Knight stated that she took the money because she was angry with them and that she never intended to give them any drugs. She testified that Bland handed her $60: $20 "for a girl" and $40 "for some stuff."

## SUFFICIENCY OF THE EVIDENCE

Knight contends in her first and second issues that the evidence is legally and factually insufficient to sustain her conviction because: (1) the State failed to present evidence to corroborate Anastacio's testimony regarding her offer to sell him cocaine; and (2) the State failed to present sufficient evidence to prove that she actually intended to sell cocaine.

## STANDARDS OF REVIEW

In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *See Lacour v. State,* 8 S.W.3d 670, 671 (Tex.Crim.App.2000) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). We resolve any inconsistencies in the evidence in favor of the verdict. *See Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim.App.2000).

In reviewing a challenge to the factual sufficiency of the evidence, we begin with the assumption that the evidence is legally sufficient. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We must view all the evidence without the prism of the "in the light most favorable to the prosecution" construct. *See Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). We ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000); *see also Goodman v. State,* 66 S.W.3d 283, 285 (Tex. Crim.App.2001).

We must also remain cognizant of the factfinder's role and unique position—one that the reviewing court is unable to occupy. *Johnson,* 23 S.W.3d at 9. The jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. *Goodman,* 66 S.W.3d at 287. A decision is not manifestly unjust as to the accused

merely because the factfinder resolved conflicting views of evidence in favor of the State. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App.1997).

### CORROBORATION

■■■ When the State alleges delivery of a controlled substance by offer to sell,[3] "proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree." TEX. HEALTH & SAFETY CODE. ANN. § 481.183(a) (Vernon 1992). The corroboration required by section 481.183(a) does not equate to that required for corroboration of accomplice testimony. *See Vivanco v. State*, 825 S.W.2d 187, 191 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd); *Garber v. State*, 671 S.W.2d 94, 99–100 (Tex. App.—El Paso 1984, no pet.). Our research has revealed at least three types of evidence which can satisfy the corroboration requirement:

- evidence that the offeror had possession of or access to the controlled substance offered; *see Evans v. State*, 945 S.W.2d 259, 261 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd); *Vivanco*, 825 S.W.2d at 192; *Pena v. State*, 776 S.W.2d 746, 749 (Tex.App.—Corpus Christi 1989, pet. ref'd); *Garber*, 671 S.W.2d at 98;

- testimony of witnesses to the transaction other than the "offeree"; *see Vivanco*, 825 S.W.2d at 192; *Pena*, 776 S.W.2d at 749; *Taylor v. State*, 674 S.W.2d 323, 331–32 (Tex.App.—Waco 1983), *pet. dism'd, improvidently granted*, 770 S.W.2d 778 (Tex. Crim.App.1985); *but cf. Iniguez v. State*, 835 S.W.2d 167, 172 (Tex.

App.—Houston [1st Dist.] 1992, pet. ref'd); (testimony by surveillance officer who saw but did not hear transaction did not corroborate offer to sell); or

- an electronic recording of the transaction; *see Hernandez v. State*, 956 S.W.2d 699, 704 (Tex.App.—Texarkana 1997, no pet.); *but cf. Douglas v. State*, 688 S.W.2d 687, 689 (Tex. App.—Texarkana 1985, pet. ref'd) (still photograph did not corroborate offer to sell because it "proved only that [offeror] was present").

■■■ According to Knight's counsel, "the actual presence of drugs (or something purporting to be drugs) is present as corroboration in every published offer-to-sell case, except for two." Knight contends that this type of corroboration is virtually indispensable. However, the Court of Criminal Appeals has plainly stated that this is unnecessary.

> [W]hen delivery is by offer to sell no transfer need take place. *A defendant need not even have any controlled substance.* All he need do, as appellant did, is state that he had a hundred dollar bag of heroin he would sell to the officers. The offense is complete when, by words or deed, a person knowingly or intentionally *offers* to sell what he states is a controlled substance.

*Stewart v. State*, 718 S.W.2d 286, 288 (Tex. Crim.App.1986) (first emphasis added) (footnote omitted); *accord Hernandez*, 956 S.W.2d at 703–04; *Francis v. State*, 890 S.W.2d 510, 513 (Tex.App.—Amarillo 1994, pet. ref'd).

---

**3.** The Texas Controlled Substances Act defines the term "deliver" as an actual transfer of a prohibited substance to another, a constructive transfer of the substance to another, or an offer to sell the substance to another. *See* TEX. HEALTH & SAFETY CODE. ANN. § 481.002(8) (Vernon Supp.2002); *Conaway v. State*, 738 S.W.2d 692, 694 (Tex.Crim.App. 1987); *Sims v. State*, 82 S.W.3d 730, 732 (Tex.App.—Waco 2002, pet. filed); *Cano v. State*, 3 S.W.3d 99, 105 (Tex.App.—Corpus Christi 1999, pet. ref'd).

Knight contends that Bland cannot corroborate Anastacio's testimony because they are co-offerees. *See Douglas*, 688 S.W.2d at 688. In *Douglas*, the Texarkana Court concluded without elaboration that the State had failed to establish the necessary corroboration "because no one other than the undercover officers (who were the offerees) heard the offer to sell." *Id.* The court provided a limited recitation of the pertinent facts:

> Douglas offered to sell 1,000 methaqualone tablets to undercover officers in Titus County. Douglas met with the officers in a parking lot on that day and actually delivered 1,000 pills which closely resembled methaqualone. He was paid $3,000.00 for the pills.

*Id.* The court did not discuss the varying roles (if any) the different officers played during the course of the transaction under review.

Conversely, this Court and others have differentiated between an undercover officer who actually strikes a bargain with a seller and others involved in the transaction. *See Vivanco*, 825 S.W.2d at 192; *Pena*, 776 S.W.2d at 749; *Taylor*, 674 S.W.2d at 331–32. In *Taylor*, we observed:

> The record does not show that Ferris' participation in the transaction extended to anything more than being the person who brought the buyer and seller together. The evidence does not show, for example, that Ferris attempted to purchase the drugs from Ramage in order to resell them to Powell or to any other person; however, the evidence is sufficient to show that Ferris, as an informant, was facilitating the drug buy for Powell and that Ramage, Weber and Appellant were aware that Powell had the money and was the intended purchaser. The mere fact that Ferris was present at the time Ramage offered to

sell the drugs to Powell does not establish Ferris as an "offeree"....

*Taylor*, 674 S.W.2d at 331; *accord Vivanco*, 825 S.W.2d at 192; *Pena*, 776 S.W.2d at 749.

Consistent with *Taylor*, we hold that Bland was not an "offeree" within the meaning of section 481.183(a). Thus, his testimony corroborates Anastacio's. Moreover, Knight herself provided partial corroboration of Anastacio's testimony. She testified that Bland and Anastacio asked if she could get them some marihuana and crack cocaine, that she told them to give her their money, and that she took it.

Accordingly, we conclude that the State provided ample corroboration of Anastacio's testimony regarding the offer to sell.

**INTENT/KNOWLEDGE**

■■■ To prove an offer-to-sell case, the State must prove that the defendant intentionally or knowingly offered to sell a controlled substance. *See Stewart*, 718 S.W.2d at 288; *Hernandez*, 956 S.W.2d at 703; *Francis*, 890 S.W.2d at 513; *Vivanco*, 825 S.W.2d at 190. The jury must "almost always" infer the mental culpability of the defendant from her acts, conduct and words. *See Moore v. State*, 969 S.W.2d 4, 10 (Tex.Crim.App.1998); *accord Nickerson v. State*, 69 S.W.3d 661, 667 (Tex.App.—Waco 2002, pet. ref'd). Thus, evidence which corroborates the offeree's testimony is probative of the offeror's intent or knowledge. *See Francis*, 890 S.W.2d at 513; *Vivanco*, 825 S.W.2d at 192.

Bland and Anastacio testified that Knight offered to sell Anastacio $20 worth of cocaine. Knight testified that they paid her $40 for marihuana and cocaine. All three testified that she took the money. From this evidence, a rational trier of fact could have found beyond a reasonable doubt that Knight intentionally and know-

ingly offered to sell cocaine to Anastacio. Thus, the record contains legally sufficient evidence to support the conviction.

The only controverting evidence in the record comes from Knight. She did not specify whether she negotiated the transaction with Anastacio or Bland, though it is implicit in her testimony that she negotiated with Bland. She specifically denied having any intent to actually sell cocaine to Anastacio. Rather, she testified that she intended to steal his money. The fact that she did not return with cocaine for Anastacio tends to corroborate her testimony.

These conflicts in the evidence presented the jury with a credibility issue to resolve. The jury resolved that issue in favor of the State, and we must defer to the jury's resolution of that issue. *See Johnson*, 23 S.W.3d at 13; *Shugart v. State*, 32 S.W.3d 355, 359 (Tex.App.—Waco 2000, pet. ref'd). Accordingly, we conclude that the evidence is factually sufficient to show that Knight intentionally or knowingly offered to sell cocaine to Anastacio. *See Hernandez*, 956 S.W.2d at 704.

For the foregoing reasons, we conclude that Knight's first and second issues are without merit.

### INEFFECTIVE ASSISTANCE

■ Knight argues in her third issue that she received ineffective assistance of counsel during the guilt-innocence phase because counsel failed to: (1) object to evidence that she committed the offense of prostitution during her dealings with Anastacio and Bland on the occasion in question; (2) object to evidence of other unadjudicated extraneous offenses; (3) challenge for cause a biased member of the venire panel; (4) object to the court's "recognition" of Anastacio as "an expert in the field of narcotics sales" which Knight characterizes as a comment on the weight of the evidence; and (5) request *Brady* evidence or seek a list of the State's witnesses and their prior criminal histories.

To prevail on an ineffective assistance claim, an appellant must overcome the strong presumption that counsel rendered reasonably professional assistance. *See Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex.Crim.App.1999). Ordinarily, this presumption cannot be overcome without evidence in the record of counsel's reasons for the acts or omissions of which the appellant complains. *See Johnson v. State*, 68 S.W.3d 644, 655 (Tex.Crim.App.2002); *Thompson*, 9 S.W.3d at 813–14; *Murray v. State*, 24 S.W.3d 881, 891 (Tex.App.—Waco 2000, pet. ref'd). However, we do note that a single act or omission on counsel's part can be so egregious as to constitute ineffective assistance. *See Thompson*, 9 S.W.3d at 813; *Scott v. State*, 57 S.W.3d 476, 483 (Tex.App.—Waco 2001, pet. ref'd).

The record in this case is silent as to the reasons counsel acted or failed to act with regard to the instances of which Knight now complains. None of the acts and omissions cited is so egregious as to constitute ineffective assistance by itself. Accordingly, we conclude that Knight has failed to overcome the presumption that counsel had sound reasons for acting or failing to act in each instance. Thus, we conclude that her third issue is without merit.

### PUNISHMENT

■ Knight claims in her fourth issue that her sentence is void because she should have been assessed punishment within the range provided for a state jail felony rather than that provided for a third degree felony. The State concedes this issue.

Knight contends in her fifth issue that she received ineffective assistance of counsel during the punishment phase because

counsel failed to object to: (1) the sentencing range in the punishment charge; (2) the good conduct time and parole instructions in the punishment charge; or (3) the State's introduction of irrelevant and prejudicial punishment evidence.

The indictment alleges that Knight committed the offense of delivery of cocaine by offering to sell cocaine to J.J. Anastacio. The indictment contains two enhancement allegations to increase her punishment to that for an habitual offender. The State abandoned one of the enhancement allegations before trial. The enhancement allegation submitted to the jury concerned a 1991 forgery conviction which did not include a deadly weapon finding.

The Penal Code does not provide for enhancement of a non-aggravated state jail felony with only one prior non-aggravated state jail felony conviction. *See Dickson v. State*, 986 S.W.2d 799, 803 (Tex.App.—Waco 1999, pet. ref'd) ("Punishment for a non-aggravated state jail felony offense can be enhanced to the level of a third degree felony if the defendant has two prior state jail felony convictions."); *see also* TEX. PEN.CODE ANN. § 12.42(a)(1), (2) (Vernon Supp.2002). Accordingly, we conclude that Knight's fourth issue is meritorious. Because this requires a new punishment hearing, we do not reach Knight's fifth issue.

### OVERBREADTH

In a post-submission letter brief, Knight contends that section 481.002(8) (which provides the statutory definition of "deliver") is unconstitutionally overbroad because it criminalizes speech protected by the First Amendment. Knight did not raise this issue at trial, but a challenge to the facial constitutionality of a statute may be raised for the first time on appeal. *See Bryant v. State*, 47 S.W.3d 80, 84 (Tex.App.—Waco 2001, pet. ref'd);

*Bader v. State*, 15 S.W.3d 599, 603 (Tex. App.—Austin 2000, pet. ref'd). Accordingly, we address this issue.

A statute is impermissibly overbroad when, "in addition to proscribing activities which may constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by the First Amendment." *Smith v. State*, 959 S.W.2d 1, 24 (Tex.App.—Waco 1997, pet. ref'd) (quoting *Bynum v. State*, 767 S.W.2d 769, 772 (Tex.Crim.App.1989)). "[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself." *United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir.1990) (quoting *United States v. Varani*, 435 F.2d 758, 762 (6th Cir.1970)); *accord Smith*, 959 S.W.2d at 24.

Section 481.002(8) (when read in conjunction with section 481.112) prohibits a person from offering to sell a controlled substance. Such an offer is not speech protected by the First Amendment. *See Smith*, 959 S.W.2d at 24; *Rowlee*, 899 F.2d at 1278; *Varani*, 435 F.2d at 762. Accordingly, we conclude that Knight's overbreadth challenge is without merit.

We affirm the judgment of conviction. We reverse that portion of the judgment assessing punishment and remand this cause to the trial court for a new punishment hearing. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2002); *Dickson*, 986 S.W.2d at 806.