Affirmed and Memorandum Opinion filed May 29, 2008








Affirmed and Memorandum Opinion filed May 29, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00124-CR

____________

 

RUBEN HERNANDEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 1072824

 



 

M E M O R A N D U M   O P I N I O N








A jury convicted appellant, Ruben Hernandez, of capital
murder, and he was automatically sentenced to life imprisonment in the
Institutional Division, Texas Department of Criminal Justice.  On appeal, he
asserts the following grounds for reversal of his conviction:  (a) the trial
court erred in admitting his recorded video statements, (b) he was denied the
opportunity to question one of the State=s expert
witnesses, (c) the trial court erroneously denied his requested instruction on
the lesser-included offense of theft, (d) he was denied his right to effective
assistance of counsel, and (e) the trial court improperly permitted the State
to present extraneous-offense evidence for the purpose of showing bad
character.  We affirm.

I.  Factual and Procedural Background

Appellant has not challenged the sufficiency of the
evidence.  We therefore discuss the facts only briefly here and throughout the
opinion as necessary to address appellant=s issues.  

On June 9, 2006, appellant met with the decedent, Demond
Washington, a known drug dealer, in the parking lot of a grocery store in the
Houston area.  Appellant shot the decedent in the left side of the back of his
head as the decedent sat in the driver=s seat of the
decedent=s car.  The
decedent died instantly from the gunshot wound.  Appellant took cash from the
decedent, moved his body from the driver=s seat to the
front passenger seat of the car, and drove away.  Appellant used some of the
money he took from the decedent to buy beer and chips and to fill up the decedent=s car with gas in
case of a high-speed police chase.  Either before or after driving around for
some time, appellant dumped the decedent=s body in a church
parking lot and later abandoned the decedent=s car in the
parking lot of a near-by abandoned convenience store.  








The next morning a church member discovered the decedent=s body and notified
the Houston Police Department (AHPD@).  On arriving at
the scene, HPD officers determined that the shooting had taken place
elsewhere.  At about the same time, officers received a call regarding a
suspicious vehicle parked by the convenience store.  The responding officer saw
blood on the driver=s and passenger=s seats, as well
as blood in the back seat.  Documents in the vehicle indicated that Ricky
Washington owned the vehicle, and officers discovered that Washington had
loaned the car to his nephew, the decedent.  The homicide officer investigating
the decedent=s death, HPD Sergeant John Belk, was advised that a
vehicle possibly related to the homicide had been discovered; after driving to
the vehicle=s location, Belk discovered a wallet in the trunk of
the car and identified the decedent by the photograph on the driver=s license.  A
witness found the keys to the decedent=s vehicle in a
nearby ditch and turned them in to the officers.  

A few days later, an informant told Belk that he believed
appellant was involved in the decedent=s death.  On June
13, 2006, appellant was arrested for an unrelated offense and transported to
HPD headquarters, where Belk initiated contact with appellant regarding the
other offense.  At the beginning of the unrecorded portion of the interview,
Belk read appellant his Miranda rights, and appellant waived these
rights.[1] 
Once the discussion turned to the decedent=s murder, Belk
began video recording the interview, and again read appellant his rights, which
appellant waived.  The recorded portion of this interview lasted for about an
hour.  Near the beginning of the videotaped interview, appellant stated, AI=m not going to say
anything.  I=m just going to terminate this interview. Go ahead and
take me back to county, because I don=t have a lawyer.@  After Belk
questioned appellant to determine whether he wanted to terminate the interview,
the interview continued.  Subsequently, appellant provided a written statement
in which he indicated he had witnessed the murder of the decedent.  








Throughout the day, appellant=s story continued
to evolve; he was interviewed several different times by Belk and his partner,
HPD Officer Michael Miller.[2] 
Between the first and second interviews, officers transported appellant to
several locations where he indicated that some evidence related to the offense
was hidden, but no evidence was recovered.  While at one of these locations,
appellant seemingly was overcome by the heat and was taken to a hospital by
ambulance.  He escaped from police custody when he was at the hospital, but was
discovered hiding nearby and was returned to the hospital and then transported
back to HPD headquarters.  During later interviews, appellant admitted to
killing the decedent, although he stated that the gun Ajust went off@ while he and the
decedent were struggling over it during an alleged drug deal gone wrong.  He
also provided details to police regarding locations where some physical
evidence could be found.

Appellant was indicted on August 24, 2006 for the offense
of capital murder.  Before his trial started on February 1, 2007, the trial
court conducted a hearing on appellant=s motion to
suppress his videotaped statements.  After viewing the videotapes and hearing
testimony, the trial court denied appellant=s motion to
suppress, and redacted versions of appellant=s videotaped
statements were played for the jury at his trial.[3] 
Despite appellant=s claim of accident or self-defense in the
shooting, the jury convicted appellant of capital murder on February 8, 2007. 
Appellant was automatically sentenced to life imprisonment in the Institutional
Division, Texas Department of Criminal Justice.  This appeal timely followed.

II.  Issues Presented

In his first issue, appellant contends that the trial court
erred by denying his motion to suppress his first videotaped statement, and all
subsequent statements, because appellant invoked his right to counsel.  In
issues two and three, appellant contends the trial court erroneously permitted
HPD officer John Belk to testify as a blood spatter expert and denied him the
opportunity to contest the reliability of Belk=s theories.  In
his fourth issue, appellant complains that the trial court erred in denying his
requested lesser-included offense instruction.  Appellant argues that he was
denied the effective assistance of counsel in his fifth issue.  Finally,
appellant contends in his sixth issue that the trial court erred in admitting
extraneous offense evidence for the purpose of showing bad character.








III.  Analysis

A.      Motion to Suppress

In his first issue, appellant contends the trial court
erred in admitting his first recorded video statement, and all subsequent
statements, because he invoked his right to counsel and that invocation was not
honored by investigating officers.  Appellant, however, has not preserved this
issue for our review.

Generally, when a pretrial motion to suppress evidence is
overruled, the defendant need not subsequently object at trial to the same
evidence to preserve error.  See Moraguez v. State, 701 S.W.2d 902, 904
(Tex. Crim. App. 1986); Mikel v. State, 167 S.W.3d 556, 558 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  But when the defendant affirmatively asserts during
trial that he has Ano objection@ to the admission
of evidence at issue, he waives any error in its admission, despite the
pretrial ruling. See Dean v. State, 749 S.W.2d 80, 83 (Tex. Crim. App.
1988) (en banc); Moraguez, 701 S.W.2d at 904; Mikel, 167 S.W.3d
at 558.

In this case, appellant initially preserved error through
the trial court=s ruling on the pretrial motion to
suppress.  But when the State offered the videotaped recording of appellant=s statements, his
counsel expressly stated that he had no objections.  Because appellant=s counsel
specifically stated that the defense had no objections to the admission of the
videotaped statements, he has waived any error in their admission.  








Further, even if this issue were preserved, appellant has
not established the trial court erred in denying his motion to suppress.  We
ordinarily review a trial court=s ruling on a motion to suppress for abuse
of discretion.  Dyar v. State, 125 S.W.3d 460, 462 (Tex. Crim. App.
2003); see also
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (en banc). 
At a suppression hearing, the trial court is the sole judge of the credibility
of the witnesses and of the weight to be given to their testimony.   Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex. Crim. App. 2007); Cantu v. State, 817 S.W.2d 74, 77
(Tex. Crim. App. 1991) (en banc).  As long as they are supported by the record,
we afford almost total deference to a trial court=s findings of
historical fact. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997) (en banc). Further, we defer to a trial court=s application of
law to fact rulings if they turn on an evaluation of credibility and demeanor. 
Id.  

A suspect must invoke his right to counsel Asufficiently
clearly that a reasonable police officer in the circumstances would understand
the statement to be a request for an attorney.@  Davis v.
United States, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355 (1994); cf.
Marshall v. State, 210 S.W.3d 618, 628 (Tex. Crim. App. 2006) (applying Davis
in context of right to remain silent).  When a suspect makes an ambiguous
request for counsel, police may, but are not required to, clarify whether he
actually wants an attorney.  Davis, 512 U.S. at 461B62, 114 S. Ct.
2356B57  (AUnless the suspect
actually requests an attorney, questioning may continue.@).  Finally, under
both the Fifth and Sixth Amendments, once a defendant invokes the right to
counsel, he can waive this protection by reinitiating further communication
with the police and then knowingly and voluntarily waiving his right to
counsel.  See Cross v. State, 144 S.W.3d 521, 526B27 (Tex. Crim.
App. 2004) (citing Oregon v. Bradshaw, 462 U.S. 1039, 1045B46, 103 S. Ct.
2830, 2834B35 (1983)); Hunter v. State, 148 S.W.3d 526,
529, 533 (Tex.App.CHouston [14th Dist.] 2004, pet. ref=d).

The trial court found that appellant=s statement
regarding terminating the interview and taking him back to Acounty@ because he did
not have a lawyer was ambiguous.  The trial court determined that when Belk
attempted to clarify and determine appellant=s intent,
appellant re-initiated contact and began talking to Belk.  These findings are
supported by the record, as demonstrated by the following.  








Belk initially began interviewing appellant regarding
another offense unrelated to this case.  Once the conversation turned to the
murder investigation, however, Belk began recording the interview.  At the
beginning of the first videotaped interview of appellant, Belk read appellant
his Miranda warnings and appellant acknowledged that he understood
them.  Appellant then made the statement that he was going to Aterminate the
interview@ and that he did not Ahave a lawyer.@  Belk responded
that he Awanted to get
[appellant=s] side of the story.@  Belk then
stated, AI can=t question you
without you fully acknowledging your rights and . . . waiv[ing] those rights
and talk[ing] to me.@  Appellant replied, AIt=s not right for me
to hold something like that back.@  Appellant
continued to reinitiate the conversation with Belk.  Appellant then asked for
pen and paper so he could write a statement.  After he finished writing his
statement, appellant spoke to Belk again.  Belk re-read appellant his legal
warnings; appellant acknowledged that he understood the warnings.  Appellant
then acknowledged that he was willing to waive his rights and continue talking
to Belk about the decedent=s murder.  At the start of each subsequent
interview, officers read appellant his legal warnings, and appellant waived his
legal rights and agreed to talk with the officers.

Under these circumstances, we cannot say that the trial
court abused its discretion in denying appellant=s motion to
suppress.  Furthermore, appellant affirmatively waived any complaint regarding
the denial of his motion to suppress.  Accordingly, we overrule appellant=s first issue.

B.      Expert
Testimony

In his second and third issues, appellant contends the
trial court erred in (a) failing to follow the proper procedure before
permitting Sergeant Belk to testify as a blood-spatter expert and (b) refusing
to allow appellant an opportunity to contest the reliability of Belk=s theory before
allowing Belk to testify based on that theory.  The State responds that
appellant failed to preserve these complaints because his objections at trial
do not comport with his complaints on appeal.  We agree.

During Belk=s direct examination, appellant lodged the
following objections:








Judge, I=m going to object under 7.02[[4]]
[sic] that this individual, Officer Belk, has already testified that he=s not an expert in this field and
we=re asking him to give an expert
opinion.

. . .

Judge, I=m going to object under 7.02 again
because of this highly specialized field, Your Honor; and also the officer B with all due respect to the
officer B he doesn=t even understand the terminology
of it=s blood Aspatter@ and not blood Asplatter.@  So, if in fact, the Court would
overrule my objection, I would ask to take the witness on voir dire outside the
presence of the jury.

. . .

Your Honor B I=m sorry, Officer.  I would like to object under 7.02
and take the witness on voir dire outside the presence of the jury.

. . .

Judge, I=m going to object under 7.02, once
again, with regards to blood spatter actually getting on a firearm.  That=s another specialized conclusion
that he=s asking the officer to make, Your
Honor.

To preserve error, the complaint on appeal must comport
with the objections lodged in the trial court.  See Heidelberg v. State,
144 S.W.3d 535, 537 (Tex. Crim. App. 2004).  As is apparent from the above
objections, appellant asserted Texas Rule of Evidence 702 as the basis for
excluding Belk=s testimony.  On appeal, however, appellant asserts
that he was denied the opportunity to voir dire appellant under Texas Rule of
Evidence 705, which provides, as is relevant here, APrior to the
expert giving the expert=s opinion or disclosing the underlying
facts or data, a party against whom the opinion is offered upon request in a
criminal case shall . . . be permitted to conduct a voir dire examination
[outside the jury=s presence] directed to the underlying
facts or data upon which the opinion is based.@  Tex. R. Evid. 705.  








But a Arequest to take [a witness] on voir dire
outside the presence of the jury to >prove up= his
qualifications is not a request for a Rule 705(b) hearing to explore the >underlying facts
or data= of the expert=s opinion.@  Jenkins v. State, 912 S.W.2d 793, 814 (Tex. Crim.
App. 1993) (en banc) (op. on reh=g).  Therefore, appellant failed to
preserve his Rule 705(b) claim for appeal.  See id; see also Martinez
v. State, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) (A[U]nder Rule 33.1, the issue is not
whether . . . the trial court=s ruling is legally >correct= in every sense, but whether the
complaining party on appeal brought to the trial court=s attention the very complaint that
party is now making on appeal.@).








Moreover,
even if the trial court erred in denying appellant a Rule 705(b) hearing, we
must still determine whether the court=s Aerror was so harmful as to require a
reversal.@  Alba v. State, 905 S.W.2d 581, 588 (Tex. Crim. App. 1995) (en
banc).  Here, any error in the trial court=s noncompliance with this rule was
rendered harmless because virtually the same evidence was admitted elsewhere
without objection.  See Ramon v. State, 159 S.W.3d 927, 931 (Tex. Crim.
App. 2004) (en banc) (AIt is a well‑accepted principle that the admission of
improper evidence will not require reversal if the same facts are proved by >other and proper= testimony.@); Lane v. State, 151 S.W.3d
188, 192B93 (Tex. Crim. App. 2004).  The State=s identified expert, Sergeant Norman
Keiswetter, an HPD crime scene investigator and a certified blood-spatter
expert, testified extensively regarding the blood-spatter evidence he
discovered in this case, without any challenges by appellant to his
qualifications as an expert.  Like Belk, Keiswetter testified that the blood
pattern in the vehicle was consistent with that expected when a person sitting
in the driver=s seat facing forward is shot in the back left side of the head.  As did
Belk, Keiswetter stated that there was blood on the inside of the pillar
between the front and back driver=s side doors of the vehicle,
indicating that the back left door was open when the decedent was shot. 
Keiswetter also agreed with Belk=s opinion that the blood in the
passenger seat was consistent with someone Ashoving or leaning@ a bloody person into that seat. 
Additionally, Harris County Assistant Medical Examiner Dr. Morna Gonsoulin
testified to essentially the same evidence as that provided by Belk.  For
example, Dr. Gonsoulin described the position of the entrance wound in the
decedent=s head and the angle of the bullet=s path.  She agreed that the path of
the bullet was consistent with the decedent being shot in the head as he sat in
the driver=s seat, with the gun about ten inches away from the back of his head
coming from the backseat driver=s side area. 

Thus,
not only did appellant fail to preserve error on his Rule 705(b) complaint, he
cannot establish harm from any error in the admission of Belk=s testimony because virtually the
same facts were proved by other and proper testimony elsewhere. Under these
circumstances, we overrule appellant=s second and third issues.

C.        Lesser-Included Offense
Instruction

In issue
four, appellant contends the trial court erred by denying his requested jury
charge on theft as a lesser‑included offense.  We employ a two‑part
test to determine whether a charge on a lesser‑included offense was
required.  Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002). 
First, we must decide whether the offense is actually a lesser‑included
offense of the offense charged.  Id.  Second, we must conclude there is
some evidence in the record that would permit a rational jury to find the defendant
guilty only of the lesser offense.  Id.  A lesser‑included offense
instruction is not required solely because Athe jury may disbelieve crucial
evidence pertaining to the greater offense, but rather, there must be some
evidence directly germane to the lesser‑included offense for the finder
of fact to consider before an instruction on a lesser‑included offense is
warranted.@  Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (en
banc) (citing Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App.
1997)).

The State does not challenge appellant=s contention that
theft is a lesser-included offense of capital murder in this case.  Thus, the
issue  here is whether there is evidence to raise the lesser-included offense
of theft.  We conclude there is not.  








To be entitled to a jury instruction on the lesser-included
offense of theft, the record must contain evidence that appellant committed a
theft of the victim=s property but did not injure or threaten
him and did not make him fearful of imminent physical injury.  See Tex. Penal Code Ann. ' 31.03(a) (Vernon
Supp. 2006); see also Matthews v. State, No. 74936, 2006 WL 1752169, at
*6 (Tex. Crim. App. June 28, 2006) (not designated for publication).  Here,
appellant admitted in his videotaped statement that he shot the decedent and
took his car and money.  Thus, there was no evidence from which a rational
juror could acquit appellant of murder in the course of robbery, while
convicting him of theft.[5] 
The trial court did not err in refusing to instruct the jury on the
lesser-included offense of theft.  Accordingly, we overrule appellant=s fourth issue.

D.      Ineffective
Assistance of Counsel

In his fifth issue, appellant asserts that he was denied
the effective assistance of counsel based on his trial counsel=s failure to (a)
preserve error on his pre-trial motion to suppress; (b) prevent admission of
appellant=s otherwise inadmissible prior convictions; and (c)
object to various witness testimony.  








We review claims of ineffective assistance of counsel under
the standard set forth in Strickland v. Washington.  466 U.S. 668, 104
S. Ct. 2052 (1984).  Under the Strickland test, an appellant must prove
(i) his trial counsel=s representation was deficient, and (ii)
the deficient performance was so serious that it deprived the appellant of a
fair trial.  Id. at 687, 104 S. Ct. at 2064.  To establish both prongs,
the appellant must prove by a preponderance of the evidence that counsel=s representation
fell below the objective standard of prevailing professional norms, and there
is a reasonable probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  Id. at 690B94, 104 S. Ct. at
2066B68. An appellant=s failure to
satisfy one prong makes it unnecessary for a court to consider the other
prong.  Id. at 697, 104 S. Ct. at 2069. This test is applied to claims
arising under the Texas Constitution as well as those arising under the United
States Constitution.  Hernandez v. State, 726 S.W.2d 53, 56B57 (Tex. Crim.
App. 1986) (en banc).

Our review of defense counsel=s performance is
highly deferential, beginning with the strong presumption that the attorney=s actions were
reasonably professional and were motivated by sound trial strategy.  Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc). When the
record is silent as to trial counsel=s strategy,[6]
we will not conclude that defense counsel=s assistance was
ineffective unless the challenged conduct was A>so outrageous that
no competent attorney would have engaged in it.=@  Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

1.       Failure to
Preserve Error on Motion to Suppress








First, appellant complains that his counsel was ineffective
because he affirmatively waived any appellate complaint regarding the trial
court=s denial of
appellant=s motion to suppress.  As discussed above, however,
the trial court did not abuse its discretion by denying appellant=s motion to
suppress.  Thus, appellant cannot establish there is a reasonable probability
that, but for counsel=s deficiency, the result of the proceeding
would have been different. 
See Strickland, 466 U.S. at 690B94, 104 S. Ct. at
2066B68; see also
Lemon v. State, 135 S.W.3d 878, 883B84 (Tex. App.CHouston [1st
Dist.] 2004, no pet.).   His
failure to satisfy this prong makes it unnecessary for this court to consider
the other prong of the Strickland test. 

2.       Discussion
of Appellant=s Prior
Convictions

Appellant next asserts that his trial counsel was
ineffective by stating to the jury, during opening argument, that appellant had
a Acheckered past@ and had been Ain and out of the
system.@  But the record
is silent regarding his counsel=s strategy, and we cannot say that counsel=s conduct is so
outrageous that no competent attorney would have engaged in it.[7] 
See, e.g., Knight v. State, 91 S.W.3d 418, 424 (Tex. App.CWaco 2002, no
pet.) (concluding, in drug possession trial, that counsel=s failure to
object to evidence of prostitution and other unadjudicated extraneous offenses
did not constitute ineffective assistance without any indication in record
regarding counsel=s action or inaction); Gamble v. State,
916 S.W.2d 92, 93 (Tex. App.CHouston [1st Dist.] 1996, no pet.) (ADue to lack of
evidence in the record concerning trial counsel=s reasons for . .
. not objecting to certain testimony and argument, we are unable to conclude
that trial counsel=s performance was deficient.).  This
argument therefore provides no basis for relief.

3.       Failure
to Object

Appellant additionally argues that trial counsel was
ineffective for failing to object to various witness testimony.  Specifically,
he complains of the following alleged failures to object:








1.                 
A witness testified that he knew appellant had been in jail before
because other people and appellant had told him;[8]          

2.                 
A witness testified that he knew appellant from being incarcerated with
him;[9]

3.                 
A witness testified that his grandfather saw someone get out of the
decedent=s vehicle,
park it, and walk away;[10]

4.                 
A witness testified that he suspected appellant because a store owner
saw him in the area;[11]

5.                 
A witness testified as to what his girlfriend and others in the
neighborhood thought regarding the murder;[12]








6.                 
A police officer testified as to what a witness told him;[13]

7.                 
A police officer testified that those on whom appellant cast blame for
the murder were able to verify their whereabouts;[14]

8.                 
A police officer testified regarding appellant=s escape from the hospital, relying on what
others had told him;[15]

9.                 
A police officer testified that a witness told him he saw the Ashooter after the shooting@;[16]

10.             
A police officer testified that everything appellant said about another
person committing the crime was false;[17]

11.             
A police officer testified as to which parts of appellant=s statements he believed
were false;[18] and

12.             
A police officer testified that appellant=s
statements that he was in fear for his life were false.[19]








As to appellant=s
complaints 1 and 6, as noted above, these statements are arguably not hearsay. 
Thus, appellant has not established that the trial court would have erred in
overruling an objection regarding this testimony had his trial counsel
objected.  See Ortiz v. State, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002) (noting
that to establish ineffective assistance based on a failure to object, an
appellant must show that the trial court would have erred in overruling these
objections).   Regarding appellant=s
complaints 3, 4, and 5, the record reflects that appellant=s trial counsel made
hearsay objections to these statements, which were sustained by the trial
court.  Thus, his counsel was not ineffective for failing to object to these
statements.  As noted above, complaints 2 and 9 are not supported by the
record.  Finally, appellant=s
trial counsel could have refrained from objecting to the officers= statements that they did
not believe appellant=s
initial statements for strategic reasons: appellant=s own statements in his later interviews
established that his earlier statements were untruthful.  Thus, his trial
counsel may have refrained from objecting to these statements in an effort to
downplay appellant=s
initial untruthfulness with the officers.  Moreover, notwithstanding any
alleged error in failing to object to these statements, we cannot say that a
reasonable probability exists that the result of appellant=s trial would have been
different had his counsel objected to them. 








In sum, the record does not support many of appellant=s complaints regarding his
trial counsel=s
failure to object.  Further, appellant has not established that several of the
allegedly objectionable statements were hearsay; thus, we cannot say the trial
court would have erred in overruling objections to these statements.  And, even
if his trial counsel were deficient by failing to object to some of these
statements, he has not established that but for this deficiency, the outcome of
the proceeding would have been different.  We therefore overrule appellant=s fifth issue.

E.        Extraneous-Offense Evidence

In his
sixth and final issue, appellant argues that the trial court erred in
permitting the State to present extraneous offense evidence for the purpose of
showing appellant=s bad character.  First, appellant points to his pre-trial
motion in limine as preserving error on this issue.  But a motion in limine
does not preserve error; an appellant must still object to the evidence when it
is introduced at trial.  Martinez v. State, 98 S.W.3d 189, 193 (Tex.
Crim. App. 2003).  Appellant states in his brief, AThen the prior acts started coming
in, without objection, from the witnesses in this case.@ (emphasis added).  Thus, all but one
of appellant=s complaints regarding extraneous offenses have not been preserved for
our review.[20]  

Appellant
complains of the following exchange between the State and one of the State=s witnesses:

Q.        So, [appellant] is somebody that you would see on a somewhat
regular basis?

A.        Yes, sir.

Q.        How often would you say that you would run into him?








A.        Whenever he would come approach me to buy something from him
or, you know, he B

[Trial Counsel]:         Judge, I=m going to object under 4.04(a) and (b) and 4.03,
Judge, to that testimony.

[The Court]:               Overruled as to that
question.

Contrary to appellant=s assertion in his briefing, when
appellant made his Texas Rules of Evidence 403 and 404 objections to this
witness=s testimony, the witness had not yet
indicated that appellant purchased drugs from him.  The fact that appellant had
bought Asomething@ from this witness does not
constitute evidence of a bad act or extraneous offense.  There is no reference
to drugs or drug dealing in the foregoing exchange.  In fact, this witness did
not testify that appellant purchased drugs from him until later in the record,
when the following exchange occurred:

Q.        Okay.  And how do you know Ruben Hernandez?  Has he bought
drugs from you?

A.        Yes, sir.

[Trial Counsel]:         Judge, I=m going to object to the improper character
impeachment.

[The Court]:               It=s overruled.

Q.        Has he bought drugs from you?

A.        Yes, sir.

As to
this colloquy, this objection appears to relate to Texas Rule of Evidence 609,
dealing with impeachment of witnesses by evidence of convictions of other
crimes.   See Tex. R. Evid. 609(a). 
On appeal, however, appellant relies on Texas Rule of Evidence 404(b),
providing that A[e]vidence of other crimes, wrongs or acts
is not admissible to prove the character of a person in order to show action in
conformity therewith.@  Thus, appellant has not preserved error
on this issue.  See Tex. R. App.
P. 33.1(a).  








Even if his impeachment objection were sufficient to put
the trial court on notice of his extraneous-offense complaint, however,
appellant cannot establish that this error caused harm.  See Tex. R. App. P. 44.2(b) (AAny other error,
defect, irregularity, or variance that does not affect substantial rights must
be disregarded.@).   Appellant repeatedly admitted in his
statements that he is a drug user.  In fact, his trial strategy involved the
theory that the shooting occurred during a drug deal gone bad.  Finally,
appellant did not object to other testimony regarding his purchase of drugs. 
Thus, the error, if any, was rendered harmless because the same facts were
established by other unobjected-to evidence.  Willis v. State, 785
S.W.2d 378, 383 (Tex. Crim. App. 1989) (applying the rule that inadmissible
evidence may be rendered harmless if other similar evidence proving the same
fact is admitted without objection).  We therefore overrule appellant=s sixth issue.

IV.  Conclusion

Having overruled each of appellant=s six issues, we
affirm the judgment of the trial court.

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment rendered
and Memorandum Opinion filed May 29, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Guzman.

Do Not Publish C Tex. R. App. P.
47.2(b).









[1]  Belk testified that appellant was read his rights
and waived them before the interview began.  Belk further testified that, at
the beginning of each recorded interview with a suspect, it is HPD procedure to
inform the suspect of his or her rights.





[2]  The record contains four videotaped interviews of
appellant.





[3]  Statements regarding the other offense in which
appellant allegedly was involved were redacted from the videotapes admitted and
played for  the jury.





[4]  Tex. R. Evid.
702.  This rule provides, AIf scientific,
technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as
an expert by knowledge, skill, experience, training, or education may testify
thereto in the form of an opinion or otherwise.@  Id.





[5]  See Hampton, 109 S.W.3d at 441; see also
Matthews, 2006 WL 1752169, at *6 (concluding that a capital murder
defendant was not entitled to a lesser-included theft instruction where he gave
police two statements, changed his story multiple times, and ultimately
admitted he was present at the scene of the shooting, shot at the victim in
self-defense, and left the scene in the victim=s car); Maxwell v. State, No. 74309, 2004 WL 3094649, at *14
(Tex. Crim. App. Nov. 17, 2004) (not designated for publication) (determining a
capital murder defendant was not entitled to jury instruction on
lesser-included offenses of robbery and theft when defendant admitted to
officers that he had killed victim, as this admission prevented jury from
rationally acquitting him of capital murder while convicting him of robbery or
theft).





[6]  Here, appellant filed a motion for new trial, but
did not challenge his trial counsel=s
effectiveness.  No hearing was conducted on the motion, and it was overruled by
operation of law. 





[7]  In fact, appellant admits in his briefing that A[o]bviously there was a trial strategy for telling the
jury that [a]ppellant was a dope addict . . . .@  The robbery and murder in this case arose out of a drug transaction;
appellant=s defense was that he was involved in a drug
transaction that went wrong.  We presume  appellant=s counsel had a legitimate trial strategy for
referring to appellant=s prior convictions.





[8]  The following exchange occurred relevant to this
complaint:

Q.         What do you know of Ruben Hernandez?

A.         Not a whole lot.  I knew he was in jail before that and --

Q.         Well, let me stop you there.  Do you know whether or not he
did drugs?

A.         Yes.

Q.         How do you know that?

A.         People had talked, and he had told me he was in jail for
that. 

First, because this witness
testified that appellant told him he had been in jail, this statement is
arguably not hearsay.  See Tex.
R. Evid. 801(e)(2) (admission by party-opponent). In addition, as discussed above, appellant=s defensive theory was that he killed the decedent
during a drug transaction gone wrong.  Thus, his trial counsel=s decision to forego objecting to this statement on
any other evidentiary basis was presumably based on sound trial strategy.





[9]  The record actually reflects that this witness
testified he knew the decedent, not appellant, in this manner:

Q.         Okay.  Now, let=s
talk about the victim, Demond Washington.  How do you know him, and how long
have you known him?

A.         I=ve known him since elementary, first grade all the way
to high school.

Q.         And how often would you see him?

A.         Based on us being out from incarceration, you know,
daily through the neighborhood, parties.





[10]  The record reflects that a hearsay objection to this
testimony was sustained.





[11]  Appellant=s
trial counsel objected to this testimony, and his objection was sustained.





[12]  Likewise, a hearsay objection was sustained
regarding this testimony.





[13]  This officer stated that a witness gave him Ahis thoughts on what might have happened and also
provided the name of the defendant.@ 
Because this statement was not offered for its truth, it does not appear to be
hearsay.  See Tex. R. Evid. 801(d)
(defining hearsay as out-of-court statement offered for its truth).  Appellant
has not explained whether or how it constitutes Ahearsay by inference@ or Abackdoor hearsay.@  See,
e.g., Deary v. State, 681 S.W.2d 784, 788 (Tex. App.CHouston [14th Dist.] 1984, pet. ref=d) (concluding that testimony of police officer that
person involved with offense had been asked the names of others also involved,
resulting in the officer=s location of a photograph of appellant, which the
officer further testified had been identified by another witness as the
individual involved in the offense, was inadmissible hearsay by inference
because the officer would not have been permitted to testify that the person
had named appellant as his accomplice).





[14]  Appellant ultimately confessed to killing the
decedent and acknowledged that his earlier statements regarding others who were
allegedly involved in the offense were false.  





[15]  The officer from whom appellant escaped also
testified, describing appellant=s escape and
subsequent re-capture.  Thus, this testimony was merely cumulative of other admissible
testimony.  The failure to object to such cumulative evidence is harmless and
does not support a claim of ineffective assistance.  Darby v. State, 922
S.W.2d 614, 624 (Tex. App.CFort Worth
1996, pet. ref=d).





[16]  At the cited location in the record (Reporter=s Record Vol. 5, pp. 45-46), there is no such
testimony.  





[17]  See note 14, supra.





[18]  See note 14, supra.





[19]  The record reflects that, before playing State=s Exhibit 2-A, which contains appellant=s second through fourth videotaped statements, for the
jury, the following exchange occurred between the State and HPD Officer Miller:

Q.         What did you perceive as [appellant=s] reasoning for being scared for both himself and his
sister=s life?

A.         At the time of his interview, he was indicating to us that
he had information as far as a murder that happened; and then he was expressing
his interest as a witness, that his sister=s
life would be in danger.

Q.         But you found out about two hours later that wasn=t true, correct?

A.         Correct.

[Trial Counsel]: I object to counsel
testifying, Your Honor.

[The Court]:      Sustained.

Q.         Did you find out whether the statement you were about to
hear was true or false, Officer?

A.         I found out that this one was false, correct.





[20]  In fact, appellant refers to several of the same
complaints in this issue as he does in his previous ineffective assistance of
counsel issue regarding his counsel=s
failure to object.